UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RAUL ALARCON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>　　　　　Defendant. | Case No.  1:23-cv-00851-HBK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[2]<br><br>(Doc. Nos. 16, 20) |

Jose Raul Alarcon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 16, 20). For the reasons stated, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and affirms the

---

[1] This action was originally filed against Kilolo Kijakazi in his capacity as the Commissioner of Social Security. (*See* Doc. No. 1). The Court has substituted Martin O'Malley, who has since been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

Commissioner's decision.

## I.  JURISDICTION

Plaintiff protectively filed for supplemental security income on March 25, 2021, alleging a disability onset date of June 1, 1985. (AR 156-62). Benefits were denied initially (AR 68-80, 100-04) and upon reconsideration (AR 81-95, 108-12). Plaintiff appeared for a telephonic hearing before an administrative law judge ("ALJ") on March 31, 2022. (AR 35-67). Plaintiff testified at the hearing and was represented by counsel. (*Id*.). The ALJ denied benefits (AR 17-34) and the Appeals Council denied review (AR 5-11). The matter is before the Court under 42 U.S.C. § 1383(c)(3).

## II.  BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 62 years old at the time of the hearing. (*See* AR 187). He has his GED. (AR 192). He rents a room, and the owner "helps" him to get out of bed and "checks on [him] periodically." (AR 46-47). He did kitchen work while he was incarcerated for 10-12 years. (AR 53). Plaintiff testified he has constant pain in the middle of his back and "all down" his right leg. (AR 44). He can stand for 15 minutes at a time, and then he must sit for 20-25 minutes before he can stand up again. (AR 44). Plaintiff reported that he uses a cane "in the house mostly," but it is not prescribed by a doctor. (AR 44-45). Plaintiff testified that in a typical month he has 19-20 "bad days," and he spends 16 hours a day lying down. (AR 45, 47). He can walk for about 15 minutes before he needs to sit down for "a while," he can pick up a maximum of a gallon of milk in each hand, he doesn't want to "deal with" people, sometimes his "mind wanders," and he has a bad memory. (AR 48-50). Plaintiff testified that he gets headaches "four times a day every day" including in the middle of the night. (AR 50-51).

## III.  STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the

Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**IV. SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the

claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 25, 2021, the application date. (AR 22). At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar, thoracic and cervical segmental dysfunction, obesity, chronic obstructive pulmonary disease, and asthma. (AR 22). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 25). The ALJ then found that Plaintiff has the RFC to

> lift, carry, push, and pull up to 50 pounds occasionally and 25 pounds frequently in medium work as defined by the regulations. He can stand and/or walk 6 hours in an 8-hour day. He can sit 6-hours in an 8-hour day. He may occasionally climb ladders, ropes, and scaffolds, climb ramps and stairs, stoop, kneel, crouch and crawl. He may frequently engage in work activity requiring flexion, extension, and rotation of the neck. He must avoid more than occasional exposure to extreme cold, vibration, and concentrated pulmonary irritants such as fumes, odors, dust, gases, chemicals, and poorly ventilated spaces. He should avoid all exposure to hazards such as dangerous moving machinery and unsecured heights.

(AR 25). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 28). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packager, counter supply worker, dining room attendant, and marker. (AR 28-29). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in

the Social Security Act, since March 25, 2021, the date the application was filed.  (AR 29).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly assessed the RFC; and

2. Whether the ALJ properly considered the medical opinion evidence.

(Doc. No. 16 at 15-25).

## VII.   DISCUSSION

**A. RFC**

The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record.  (*Id.*) (RFC determination will be affirmed if supported by substantial evidence).  However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them.  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).  Ultimately, a claimant's RFC is a matter for the ALJ to determine.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Here, Plaintiff argues the ALJ had "no reasonable basis for the limitations in [the] RFC" because (1) he found the state agency opinions unsupported; (2) he "disagreed with Plaintiff's own assessment that he was unable to perform any work on a regular basis due to back pain, neck pain, headache pain, breathing disorders, and depression; and (3) he was "unpersuaded" by Dr. Harris' opinion that Plaintiff was limited to standing, walking, and sitting no more than two hours in an eight-hour workday  (Doc. No. 16 at 16-21).  First, as discussed infra, the ALJ properly considered Dr. Harris' opined limitations under the revised regulations and found her opinion was unpersuasive.  Second, Plaintiff does not specifically challenge the ALJ's finding that the state agency medical consultants' opinion that Plaintiff had no severe physical impairments was

unpersuasive because it was inconsistent with the relevant medical evidence of record. (AR 28); 20 C.F.R. § 416.920c(c); *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider issues not raised with specificity in plaintiff's opening brief).  Moreover, even assuming, arguendo, that the ALJ erred in considering the severity of impairments at step two, any error would be harmless because step two was resolved in Plaintiff's favor.  *See Buck v. Berryhill*, 869 F.3d 1040, 1046 (9th Cir. 2017) (holding any error in omitting an impairment from the severe impairments identified at step two was harmless because step two was resolved in the claimant's favor and he "could not possibly have been prejudiced"; and further noting that the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" because in assessing the RFC the adjudicator is directed to consider all limitations and restrictions imposed by the claimant's impairments regardless of severity).

Third, Plaintiff appears to argue the RFC is not supported by substantial evidence because the ALJ improperly rejected Plaintiff's symptom claims, including the need to lay down with a heating pad for "many hours a day" and limitations in walking due to shortness of breath. (Doc. No. 16 at 19-21).  An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).   The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).  Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (AR 26). Plaintiff generally argues that these reasons do not constitute clear and convincing reasons for rejecting Plaintiff's subjective complaints. (Doc. No.16 at 20-21). This argument is unavailing.

As an initial matter, the ALJ noted that the record includes Plaintiff's reports that he helped his father as a caretaker, and he was able to engage in daily activities "not without limitations" including going to church, reading, listening to music, walking, playing cards, and doing word search puzzles. (AR 27, 59, 204, 309, 317, 538, 540). The ALJ also cited evidence that Plaintiff worked in a prison kitchen for 10 years until his release in early 2021. (AR 27, 264, 309 ("working full-time in a kitchen")). A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). However, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a).

Plaintiff argues the ALJ did not provide the requisite explanation for how Plaintiff's ability to perform these activities is "equivalent to medium, full-time work," and the ALJ did not

8

consider Plaintiff's testimony that he took care of his father with the help of his siblings and an independent caregiver, and only for a two-month period. (Doc. No. 16 at 20-21 (citing AR 58, 332)). However, as noted by Defendant, contemporaneous treatment records include Plaintiff's own reports that he was "busy helping his father, as caretaker," including helping him dress and pushing him in a wheelchair outdoors, and Plaintiff testified that his work as a kitchen helper included mopping, cleaning, serving, sweeping, and loading, "despite his allegedly debilitating symptoms." (Doc. No. 20 at 6 (citing AR 53-54, 59, 264, 538, 540)). Thus, regardless of evidence that could be viewed more favorably to Plaintiff it was reasonable for the ALJ to conclude that Plaintiff's reports that he was able to care for his father and work in the kitchen, was inconsistent with the severity of his allegations of entirely disabling limitations including an inability to stand and walk for more than 15 minutes at a time. *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *see also Tommasetti*, 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). Finally, even assuming, as argued by Plaintiff, that the ALJ's "rationale that Plaintiff can perform activities such as word search puzzles and playing cards also fails to support the conclusion that Plaintiff can perform medium work, given the fact that the activities cited are entirely sedentary in nature," any error is harmless because the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63 (9th Cir. 2008).

Moreover, as seemingly acknowledged by Plaintiff, the ALJ rejected Plaintiff's symptom claims for additional reasons, including (1) "claimant's course of treatment and diagnostic tests and examination results do not appear to be commensurate with the symptomology reported"; (2) objective medical evidence and examination results are generally "mild, normal, and/or unremarkable"; and (3) Plaintiff's inconsistent statements "call into question his honesty regarding the allegations of an inability to work, and suggests that his symptoms may not be severe as their allegations would indicate." (AR 26-27); *see* Doc. No. 16 at 20. The Court may

decline to consider this issue as Plaintiff fails to identify or challenge this specific reason for discounting Plaintiff's symptom claims in his opening brief. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Regardless, minimal and conservative treatment consisting of "medications, chiropractic care, and counseling on diet" (AR 26, 280 (reporting he uses inhaler and denies shortness of breath), 359, 362, 508, 534); unremarkable objective medical evidence and examination results (26, 283, 357-58, 460, 468, 472, 477, 481, 486, 498, 503, 549 (normal chest x-ray)); and Plaintiff's inconsistent statements regarding his work history and whether he smoked tobacco (AR 26, 60 (testifying he does not smoke cigarettes), 459 ("never smoker"), 476 (reporting he smoke one pack of cigarettes per day), 53-57 (testifying he worked before prison as a sandblaster and painter, and worked in the prison kitchen for 10 years), 173-74 (earnings record from 1980's showing work), 191 (reporting he never worked)), are clear convincing, and unchallenged reasons for the ALJ to discount Plaintiff's symptoms when formulating the RFC. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of "conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects, but the ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain is not supported by objective medical evidence); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Popa v. Berryhill*, 871 F.3d 901, 906 (9th Cir. 2017) (an ALJ may consider inconsistent statements by a claimant in assessing his or her reported symptom claims).

Next, Plaintiff argues that because the ALJ rejected the medical opinions and Plaintiff's testimony, "it is evident that the ALJ relied on his own lay interpretation of the evidence. This is especially the case in the instant matter, inasmuch as the ALJ has interpreted the findings on x-ray on his own, as neither state agency reviewing doctor reviewed same, and the ALJ rejected

limitations imposed by the only physician that had interpreted the x-ray results, namely, Dr. Harris." (Doc. No. 16 at 17).  Here, however, the ALJ provided a review of the medical evidence, including evidence that could be considered more favorable to Plaintiff, such as the November 2021 x-ray results revealing decreased disc space and osteoarthritic changes, and examination findings of tenderness of the paracervicals and occipital bone, soreness of the thoracic ribs, tenderness of the posterior superior iliac spine and sacroiliac joint, and pain with lumbar mobility. (AR 26).  As argued by Defendant, it is "precisely the role of the ALJ to review [this] evidence. In fact, the regulations expressly provide that an ALJ must consider objective medical evidence in evaluating a disability claim, including 'medical signs' (which are 'shown by medically acceptable clinical diagnostic techniques') and 'laboratory findings' (including ECGs and x-rays) in evaluating opinions." (Doc. No. 20 at 8-9 (citing 20 C.F.R. §§ 416.913(a)(1), 416.902)); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC"); *Bufkin v. Saul*, 836 Fed. App'x 578, 579 (9th Cir. 2021) ("Contrary to [plaintiff's] argument, the ALJ did not rely on her 'lay interpretation' of medical evidence.  Rather, the ALJ simply summarized the medical evidence from [physicians]; she did not interpret any x-rays or test results directly.  ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination.").  Moreover, Plaintiff does not cite any well-supported functional limitations in the medical record that were not properly accounted for the in the assessed RFC. As discussed above, the ALJ properly discounted Plaintiff symptom claims, including difficulty walking, shortness of breath, and the need to lay down throughout the day; and as discussed below, the ALJ properly considered Dr. Harris' opinion under the regulations and found it was unpersuasive.

For the foregoing reasons, the Court finds no error in the ALJ's assessment of the RFC based on all relevant evidence in the record.  (AR 25-28); *see Bayliss*, 427 F.3d at 1217.

**B. Medical Opinion**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules*

*Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*. at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In January 2022, chiropractor Jeanette Harris, DC, completed a physical medical source statement and opined that Plaintiff can walk half a city block without rest or severe pain, can sit for 30 minutes at one time before needing to get up, can stand for 20 minutes at one time before needing to sit down or walk around, can sit, stand and walk for less than 2 hours total in an 8-hour working day, needs a job that permits shifting positions at will from sitting, standing, or walking, needs periods of walking around every 45 minutes for 10 minutes at a time during an 8-hour working day, does not need to elevate his legs, does not need a cane or assistive device, can lift and carry less than 10 pounds frequently and 10 pounds occasionally, can never climb ladders, can rarely climb stairs, and can occasionally twist, stoop, crouch, and squat. (AR 447-49). Dr. Harris also opined that Plaintiff would be off task 20% of a typical workday, was capable of "moderate stress – normal work," would likely be absent from work about three days per month, and would need to take unscheduled breaks once or twice during a working day for 10 minutes at a time. (AR 449-50). The ALJ found Dr. Harris' opinion was not persuasive for several reasons.

First, as to supportability, the ALJ found Dr. Harris' opinion is supported by "little, if any explanation. Dr. Harris offered no rationale, for example, in finding the claimant would be off-task and absent from work to the degree opined. At the time, Dr. Harris had treated the claimant for only two months and therefore did not obtain a longitudinal view of his condition." (AR 27). As an initial matter, while the ALJ is permitted to consider the length, purpose, and extent of the treating relationship in considering the persuasiveness of a medical opinion under the new

regulations (20 C.F.R. § 404.1520c(c)(3)), the fact that Dr. Harris saw Plaintiff for "only two months," standing alone, is not a legally sufficient basis for rejecting the opinion. *See* 20 C.F.R. § 416.920c(a) (directing ALJ to consider and evaluate the persuasiveness of all medical opinions or prior administrative findings from medical sources); *see also Mary Elizabeth C. v. Saul*, 2020 WL 2523116, at *8 (C.D. Cal. May 18, 2020) (finding ALJ improperly discounted examining opinion on the basis that the evaluation was based on a single examination). Regardless, in addition to the limited treating relationship, the ALJ also noted that there was little to no explanation in the opinion for the severe limitations opined by Dr. Harris, particularly as to Plaintiff's propensity to be off task and absent from work to the degree opined. (AR 27).

Plaintiff argues "the rejection of opinions that are otherwise supported by chart notes are not conclusory." (Doc. No. 16 at 23); *see Garrison v. Colvin*, 759 F3d 1013 (9th Cir. 2014) (when a treating physician's check-box opinion was "based on significant experience with [Plaintiff] and supported by numerous records, [it was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."). As pointed out by Defendant, the revised regulations specifically provide that "the more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support" the medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1) (emphasis added); *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusion."); *see also Gitchell v. Comm'r of Soc. Sec.*, 2023 WL 1785914, at *15 (E.D. Cal. Feb. 6, 2023) (holding ALJ appropriately considered supportability factor by finding opining doctor did not cite to specific objective findings to support his opinions). Thus, while Dr. Harris' opinion and treatment notes list objective findings including decreased range of motion in the cervical and lumbar spine and tenderness of the paracervicals and occipital protuberance (AR 26), it was nonetheless reasonable for the ALJ to find her opinion non-persuasive based on a lack of supporting explanation "presented by" Dr. Harris to support the severity of the opined limitations, particularly as to Plaintiff's concentration and attendance. (AR 27).

Second, as to consistency, the ALJ found Dr. Harris' opinion inconsistent with her own

treatment notes, including normal musculoskeletal findings and neurological findings in December 2021. (AR 27, 474-78). Both parties acknowledge that the ALJ misattributed this treatment note to Dr. Harris, as opposed to Imade Osaghae, P.A. (*See* AR 474-78). Plaintiff argues "this failure to accurately connect Dr. Harris' findings to Dr. Harris' opinion constitutes a mischaracterization of the evidence in an attempt to diminish the consistency of the treating records with the treating opinion." (Doc. No. 16 at 24). Defendant argues "the fact remains that the ALJ relied on it, and it highlighted the inconsistency of [Dr. Harris'] medical opinion." (Doc. No. 20 at 11). Under the revised regulations, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(2). Thus, it was arguably reasonable for the ALJ to cite evidence of normal movement of all extremities, normal musculoskeletal findings, and normal gait and station in the longitudinal record, as inconsistent with the limitations opined by Dr. Harris including sitting, standing, and walking for less than 2 hours in an 8-hour workday and needing to change positions every 20-30 minutes. (*See* AR 477).

Irrespective of the ALJ's consideration of the supportability and consistency factors according to the revised regulations, the ALJ additionally found "Dr. Harris indicated the opined limitations only began in January 2022, the date she completed the medical source statement. Accordingly, I do not find this opinion persuasive." (AR 27). To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505; *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Thus, even assuming, arguendo, that the ALJ erred in considering Dr. Harris' opinion, any error would be harmless because the assessed limitations do not meet the Social Security Administration's duration requirement. *See Daniel v. Kijakazi*, 2023 WL 5956813, at *8 (E.D. Cal. Sept. 13, 2023) ("Because the limitation did not meet the twelve-month duration requirement, [any] error in addressing the limitation is nonprejudicial and therefore harmless error."); *Salvas v. Berryhill*, 2017 WL 3731994, at *4 (C.D. Cal. Aug. 28, 2017) (citing *Tommasetti*, 533 F.3d at 1038) (finding because limitations do not meet the durational

requirement, they are not probative, and "[a]ny failure to give reasons for not adopting these limitations is harmless error.").

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered the medical opinion evidence and properly assessed the RFC. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 20) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:   August 14, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE